HAGMAN, *Appellant*, v. SHAFFNER *et al.*

1. Equity. Where reformation and specific performance of deeds and contracts respecting the sale of lands will be decreed by a court of equity between the original parties thereto, similar relief will in general be given in suits between parties claiming under them.

2. Sale of Land : PRIOR EQUITIES. One purchasing land with knowledge of a prior contract as to it, on the part of the vendor, is chargeable with all the equities arising therefrom and affecting the land in the hands of the vendor, and in like manner where a third person claims under a vendee in such contract, he may, upon the payment of the purchase money, or its tender, compel the vendor, or his heirs, or a purchaser with notice, to complete the contract and convey the title.

*Appeal from Henry Circuit Court.*—HON. JAS. B GANTT, Judge.

AFFIRMED.

*M. A. Fyke* for appellant.

The appellant, for a reversal of this case, relies upon the testimony, which conclusively shows : (1) That John M. Shirley had sold, and intended to convey the land to Clayton, and by oversight the same was omitted from the deed. (2) That defendant, Shaffner, before obtaining quit-claim deeds from the Shirley heirs, had full notice of the intention of Shirley to convey the land to Clayton, and of the omission of the same from the deed. (3) That defendant, Shaffner, knew before he obtained his deeds that Clayton had conveyed the land to Dauwalter, and Dauwalter to plaintiff, and that plaintiff was in possession of the same. These facts appearing clearly, from the testimony, the plaintiff is entitled to a decree, as prayed in his petition.

*Foster P. Wright* for respondents.

(1) The petition contains no equity. (2) The evidence offered to show that the land in controversy was omitted from the deeds by mistake, is not of such a satisfactory character as to justify the interference of a court of equity. In such cases the evidence must be definite, clear and positive. *Forrester v. Scoville*, 51 Mo. 268 ; *Hendricks v. Wood*, 79 Mo. 590 ; *Judy v. Bush*, 81 Mo. 975. (3) Plaintiff bought with knowledge of the fact that Clayton never had the title, and he, therefore, cannot maintain his suit.

RAY, J.—This is a proceeding in equity, the nature and object of which is to set aside and hold for naught a deed to a certain ten acre tract of land, executed to the defendant, Isaac Shaffner, by the other defendants, who are the heirs of John Shirley, deceased, as well as the title of said heirs, and to vest the title thereto in plaintiff. Shirley was the owner of a large body of land in

Henry and St. Clair counties, Missouri, and situated, as we infer, on and near the county line between said counties. There had been pending for some weeks some negotiations between him and Wm. A. Clayton, for the sale of said lands, and a trade was made during the last sickness of said Shirley, and on the day of his death, by which Shirley conveyed five hundred and twenty acres, seventy of which were located in St. Clair county, and the rest in Henry county, by his two several deeds, and Clayton executed at the same time his several notes for three thousand dollars, payable in four years, and turned over some personal property as part of the purchase price. The petition alleged that said Clayton had paid to said Shirley the full purchase price of said real estate. This, the separate answer of Shaffner denied. The land in dispute is ten acres of the Henry county land, and was wild and unimproved timber land   *   *   *   and was not conveyed by said deeds. Shirley intended and declared that the trade and deeds were to be null and void if he got well, but in the event of his death they were to stand and hold good. Shirley and Clayton being unable to agree upon the price, agreed upon two parties to appraise the same, who, in turn, called in the defendant, Shaffner, to act with them as a third appraiser in that behalf, and they valued the land in a lump at six dollars per acre. Plaintiff read in evidence a deed from said Clayton, dated January 26, 1877, conveying the land in dispute to Peter Dauwalter. At the time of said conveyance said Clayton learned, for the first time, through Blackford, who examined the title at that time, that the ten acre tract was not included in his deed from Shirley, and ninety dollars of the purchase money was left deposited with Blackford upon an agreement between him and Dauwalter, that it should not be paid until the title thereto was perfected. An agreement and receipt to that effect, signed by said Clayton and cotemporaneous with the delivery of the deed, was read in evidence by plain-

tiff, and bore an endorsement of assignment, dated ——————————, by Dauwalter, of his title and interest therein to the plaintiff, Hagman. Plaintiff also read in evidence a quit-claim deed, for a consideration of one dollar, from said Dauwalter to plaintiff, for the land in dispute, which contained a recital that the intention thereof was only to substitute plaintiff in the place of said Dauwalter in the said contract and conveyance between said Clayton and said Dauwalter.

The evidence is, we think, reasonably certain, indeed, clear, and beyond question, that the ten acre tract was intended to be conveyed, but was omitted, by mistake, from the Shirley deed of other lands to Clayton, and that Shaffner had notice and knowledge that the ten acre tract was so intended to be included in Shirley's deed of other lands to Clayton, as was charged in the petition. Said Shaffner was present when the trade was made and deeds delivered, and acted as one of the appraisers, appraising and including the ten acres with the rest of Shirley's land, and fixing a price therefor on all of it. Some four or five witnesses, also present, say positively that Shirley said that he was selling all his lands to Clayton, except one piece in St. Clair county. And in the evidence of Shaffner there are but two statements in this behalf, one of which is that he does not know why the ten acre tract in dispute was left out of the deed, and the other is that the first he knew it was not in the deed to Clayton, was when Blackford told him two or three years after Shirley's death. And it is plain, we think, that he had always supposed that it was conveyed by Shirley to Clayton, and was surprised to find out several years after that it was not. The defendant, Shaffner, became the administrator of the estate of said Shirley. He learned, through Dauwalter, of the trade, and terms thereof, between him and Clayton, and of the result of the examination made by Blackford as to the condition of the title, and then learned, for the first time, that the

ten acres was not in the Shirley deed.   Shaffner wrote to
one of the heirs (all of whom, it seems, were non-resi-
dents), who came out and went over the land with Shaff-
ner, and sold his interest therein to Shaffner for five
dollars, and four or five of the other heirs did the same.
The interest of five or six of the seven heirs cost him
thirty dollars or thirty-five dollars.   The evidence also
shows that when Shaffner bought, and before he paid
anything for the land, he knew that Hagman, the plain-
tiff, was in possession of the land and claiming it.   The
evidence further shows, as charged in the separate answer
of Shaffner, that Hagman, the plaintiff, knew before he
purchased, that Clayton and Dauwalter neither had the
legal title to the land in controversy, and that the *land*
in dispute was not in the deed from Shirley to Clayton.
And it further shows, as charged in the answer, that
Clayton has never paid the notes given for the purchase
of the land, and that judgment thereon had been ob-
tained by Shaffner, as administrator of Shirley's estate,
in the circuit court of St. Clair county, and remained
unsatisfied, except the amount of five hundred dollars,
which had been collected from said Clayton.   Upon the
hearing, the chancellor dismissed the bill for the want of
equity, and the plaintiff appealed to this court.

It will be observed that the controversy and effort to
reform the contract and deed, in respect to the sale of
said lands, is not between the vendor and vendee, the
original parties thereto. · The plaintiff, Hagman, claims
in virtue of an equitable right of Wm. Clayton, the
original vendee, and derivable through one Dauwalter,
to whom said Clayton conveyed.   The defendant, Shaffner,
claims the title through conveyances from the heirs of J.
M. Shirley, who is the original vendor.   In general, it
may be said that where reformation and specific perform-
ance of deeds and contracts respecting the sale of lands
will be decreed by a court of equity between the original
parties, similar relief, will, in the absence of other inter-
vening and controlling equities, be given in actions

between parties, claiming under them. The person pur-- chasing lands, with knowledge of a prior contract and agreement on the part of the vendor, is chargeable with all the equities affecting the lands in the hands of the vendor, and in a like manner where a third party claims through and under the vendee in such a contract respecting the sale and conveyance of lands, he may, upon the payment of the purchase money, or tender thereof, compel the vendor or his heirs at law, or a purchaser with notice, to reform and complete the agreement and convey the title. As has been said, the vendor, as to the land, becomes in equity the trustee of the vendee, and the vendee, in his turn, becomes, in equity, a trustee for the vendor as to the purchase money. Story's Eq., 784. If this is so, it is clear, upon the evidence, that the plaintiff, Hagman, in this case, who bought from and took the place of said Dauwalter in his contract and purchase of the land from said Clayton, the original vendee, occupies no better or more meritorious position than said Clayton, and would be, we think, entitled to the relief sought in this action, upon terms no more favorable than would attend a similar action for similar relief brought on the part and in behalf of said Clayton, the original vendee. And defendant, Shaffner, who is a purchaser with notice of the equity of Clayton, and of the plaintiff claiming under said Clayton, occupies, on the other hand, the same position which would be held in respect to this transaction by the said Shirley, the original owner and vendor of the land. In any action instituted by said Clayton, the vendee, against said Shirley, or he being dead, against his heirs, to enforce his equitable right to a deed for the land omitted by mistake, what, we may ask, would be the equities as between them upon similar evidence to that in the record now before us? Shirley has, as would in that event appear, conveyed all the land which he agreed to convey except the ten acres, and said Clayton has not paid his notes given for the purchase, though they are long past due and a judgment recovered thereon amount-

ing to some five or six thousand dollars is unsatisfied except in the sum of five hundred dollars collected thereon. Manifestly, a court of equity would not, and ought not, to grant the relief here asked to said Clayton and decree him the title to the ten acres, until he had executed and performed the contract on his part, by paying, or offering to pay, his notes given therefor. This is the mutual equity which the court would require to be done in the premises by the parties. Story's Eq., 737 ; *Delasus v. Poston*, 19 Mo. 425 ; *O'Fallon v. Kennerly*, 45 Mo. 124.

In this action the evidence is, that Clayton never paid, or offered to pay, the said notes, though long over-due, or to satisfy the judgment obtained thereon, and there is no payment or tender thereof of any part thereof to the amount of the agreed price of the ten acre tract, or otherwise on the part of the plaintiff at the trial, nor is there any offer to satisfy in part or *pro tanto* said judgment on part of plaintiff. Freeman on Judgments, sec. 516. In the land trades and purchases involved, the parties had no dealings directly between themselves. Neither of them has been induced to act or change his position in respect to said title by the other. They have both fully understood the situation before making their outlays, which are but little more than nominal, in their race for the land. And, generally, it requires less strength of proof on the part of the defendant to resist successfully any application for such relief than is necessary for the plaintiff to have in order to maintain his bill. In cases of this sort the practice of courts of equity is to leave the parties, such as these, where it finds them, and to withhold all such relief, unless the facts, equities and justice of the case clearly demand it.

Under the pleadings and evidence, no such demand exists, and we are of opinion that the chancellor manifestly did right in dismissing the bill for want of equity, and for that reason the judgment of the trial court is affirmed. All concur.