### SICHER et al. v. RAMBOUSEK, Appellant.

**Division Two, January 31, 1906.**

1. **APPEAL: No Exceptions: Equity Case: Competency of Witnesses.** Whether the case be one at law or in equity, if no exceptions were taken to the overruling of the motion for a new trial, there is nothing before the appellate court for review except the record proper. If no exceptions were saved to the court's action in overruling the motion for new trial, the objections that certain witnesses were incompetent and that certain other evidence was improperly admitted, can not be considered. In such case the appellate court is precluded from inquiring into the weight of the evidence, although the suit is one in equity.

2. **REFORMING CONTRACT: Parties and Privies.** Courts of equity reform written instruments concerning lands so as to make them express the real agreements made between the parties thereto where, because of the mistake or misprision of the scrivener, the writing fails to do so. And in such case the instrument will be reformed, not only as between the parties thereto, but as between some of them and the privies of the others, such as their personal representatives or heirs, or judgment creditors, or assigns, grantees or purchasers with notice.

3. **———: Purchaser With Notice: Inquiry.** One who has notice of a fact which ought to have put him on inquiry, and which he might have discovered by using due diligence, can not claim to be a purchaser without notice.

4. **———: Laches.** Mere lapse of time does not act as a bar in cases of purely equitable jurisdiction. The fact that parties to a contract made in 1864, concerning an easement or passageway along the rear of their three adjoining stores, made no effort to have the contract reformed until 1901, does not alone make the plea of laches available.

193 Sup—8

Appeal form St. Louis City Circuit Court.—*Hon. Franklin Ferriss*, Judge.

AFFIRMED.

*John J. O'Connor* for appellant.

(1)  Plaintiffs are estopped from maintaining this action or of having "agreement" reformed or enforced in any shape against defendant, by reason of their deed to Solomon Emanuel and his deed to Isadore Simon, both of which deeds convey lot 30 free of the agreement and one of said deeds was executed prior to the recording of the "agreement." And Simon, being a stranger, bought without notice or knowledge of the said agreement, and plaintiffs cannot recover the use of any part of lot 30 in the face of their own deeds.  Steele v. Culver, 158 Mo. 136; Cadematori v. Gauger, 160 Mo. 352; Whyte v. St. Louis, 153 Mo. 80; State ex rel. v. Branch, 151 Mo. 622.  (2)  The wholesome maxim intended to insure the peace and repose of society, *"vigilantibus, non dormientibus, subvenient leges,"* closes the doors of a court of equity to the plaintiffs' claim.  Stale demands will not be aided where a party has slept upon his rights and acquiesced for a great length of time, as was done by plaintiffs in this case.  Davidson v. Mayhew, 169 Mo. 267; Becht v. Becht, 168 Mo. 525; Jones v. Rush, 156 Mo. 364; Kroening v. Goehri, 112 Mo. 648; Loomis v. Railroad, 165 Mo. 470.  (3)  Equity will not write into a deed of long standing, by way of reformation, a condition giving one of the parties thereto an advantage over the other party unless the error sought to be overcome by the reformation is an error mutual between the parties to the deed, and patent on the face of the instrument sought to be reformed; the error cannot be raised by parol evidence.  Bartlett v. Brown. 121 Mo. 353; Sweet v. Owens, 109 Mo. 7.  (4)  The trial court erred in permitting Sicher, over defendant's ob-

jection, to testify in his own favor. Sec. 4652, R. S. 1899; Kersey v. O'Day, 173 Mo. 570; Curd v. Brown, 148 Mo. 95.

*M. Hartmann* and *Walther & Muench* for respondents.

(1) No exception having been taken to the action of the trial court in overruling the motion for a new trial, there is nothing before this court for review except the record proper. Jackson v. Railroad, 80 Mo. 147; Cowan v. Railroad, 80 Mo. 423; State v. Harvey, 105 Mo. 316; Danforth v. Railroad, 123 Mo. 196; Pieper v. Neumeister, 63 Mo. App. 362; State ex rel. v. Burck-hardt, 83 Mo. 430. (2) Courts of equity will correct mistakes in deeds as between the original parties, or those claiming under them in privity, such as personal representatives, heirs, assigns, grantees, judgment creditors or purchasers from them with notice of the facts. Sieberling v. Tipton, 113 Mo. 380; Hagman v. Shaffner, 88 Mo. 28; Martin v. Nixon, 92 Mo. 35. (3) One who has notice of a fact which ought to have put him on inquiry, and which he might have discovered by using diligence, cannot claim as a purchaser without notice. Kerr on Fraud and Mistake, p. 316. (4) Mere lapse of time does not act as a bar in cases of purely equitable jurisdiction. Bollinger v. Chouteau, 20 Mo. 95; Epperson v. Epperson, 161 Mo. 577; 18 Am. and Eng. Ency Law (2 Ed.), 97; Wheeling v. Reyman, 61 U. S. A. 541. (5) Defendant took the property subject to all existing easements, whether originally created by grant or not, for the deed through which she acquired title recites that the conveyance is subject to "existing agreements and easements." Smith v. Musgrove, 32 Mo. App. 241; House v. Montgomery, 19 Mo. App. 170; Jones on Easements, sec. 184. (6) In construing an instrument of writing, the court should adopt a construction which can be given practicable effect. Mc-

Cormack v. Crow, 15 S. W. 181; McConnell v. Rathburn, 46 Mich. 303.

*John J. O'Connor* for appellant in reply.

An equity case is reviewable by the appellate court as upon its first hearing, and as though it had originated in the appellate court. And where the evidence is preserved in the bill of exceptions, and brought up on a full transcript, the appellate court will, regardless of the rulings or conduct of the trial court, review the evidence and render such judgment as, on the law and the evidence, should have been rendered by the trial court. Sheridan v. Nation, 159 Mo. 27; Robertson v. Shepherd, 165 Mo. 360; Hoeller v. Haffner, 155 Mo. 589; Rice v. Shipley, 159 Mo. 399; Halstead v. Mustion, 166 Mo. 488; Bank v. Slattery, 166 Mo. 620; Fitzpatrick v. Weber, 168 Mo. 562; Railroad v. Brandon, 81 Mo. App. 1. On examination, it will be seen that the cases cited under this head by respondent fail to show that the rule is applicable to the facts in this cause. The cases he relies on are either actions at law, or involve the specific performance of a contract, where one of the parties, having secured the benefit, seeks to avoid the contract for some inaccuracy of description, as, for instance, the case of Seiberling v. Tipton, 113 Mo. 380, where the defendant sought to avoid the force of a deed because it omitted to give the number of the block in which the lot was situated.

*M. Hartmann* and *Walther & Muench* for respondents in reply.

The rule, that in the absence of an exception to the action of the trial court in overruling a motion for a new trial, there is nothing before the appellate court for review except the record proper, applies to equity cases. Lilly v. Menke, 92 Mo. App. 357; Ryan v. Growney, 125 Mo. 481; Hill v. Taylor, 99 Mo. App. 527;

State ex rel. v. St. Louis Cir. Ct., 41 Mo. 579; Madden's Heirs v. Madden's Admr., 27 Mo. 544.

GANTT, J.—Plaintiffs, in their amended petition, allege that on July 18, 1864, one Joseph Emanuel, Jacob Emanuel, and the plaintiff William Sicher, were the owners of three adjacent lots of ground, each having a front of twenty-five feet  on the north line of Park avenue, in the city of St. Louis, by a depth of one hundred and eight feet to an east and west alley, said Joseph Emanuel being the owner of lot number 28, Jacob Emanuel of lot number 30, and plaintiff Sicher of the intervening lot number 29; that being desirous of creating certain easements appurtenant to said lots·for the use and benefit of the said several owners, as well as the building then about to be erected upon said lots, the said three parties, on July 18, 1864, entered into an agreement, which was reduced to writing and recorded in the recorder's office of the city of St. Louis; that by said agreement the said parties intended to covenant that the three houses about to be erected, one by each of said parties, should occupy the center seventy feet of said aggregate front or seventy-five feet, giving each owner one-third of seventy feet, and to forever leave vacant as a private passageway or alley the two and one-half feet, respectively, at each end of said entire tract of seventy-five feet, for the use of all the owners of said three houses, their assigns, heirs, legal representatives and tenants; that the agreement so entered into properly recites the agreement of said parties with reference to the erection of said three buildings upon the central seventy feet of said entire tract, awarded to each owner a frontage of twenty-three and  one-third feet along the north line of Park avenue, and in and by said agreement the said parties did also mutually quitclaim to each other, but by inaccurate description, so much of the lot of each as might be occupied in part by the building of one of the others, respectively, as well

as a proportionate interest in the private alleys sought to be created by this instrument, and by said writing the parties thereto did also covenant and agree that the well situated upon the rear of lot number 29, owned by plaintiff Sicher, should be used by the owners of all said three houses and their tenants, in common, and that the said well, as well as said private alley, should be kept forever in good order and free from any nuisance, by all parties using the same, and that all the parcels in which interests were by said instrument conveyed or created should be held to the several donees thereof, their heirs and assigns forever. That the parties to said agreement did thereupon proceed to execute the same and give full effect thereto by erecting three houses upon said seventy feet of ground in accordance with the true intent and meaning of said agreement, and by creating and leaving alleyways of two and one-half feet each along the eastern and western sides of said entire tract of seventy-five feet. That by an error of the scrivener in drafting said agreement, and by mutual mistake and oversight of the parties thereto, the said alleyways were therein described as being "a space of two and one-half feet off of the west line of lot 28, and also a like two and one-half feet of the east side of lot 30," contrary to the true intention of said parties, as the same was then and there conceived and executed by them, and the property quitclaimed was erroneously described and the grantors respectively erroneously set out in said contract as follows: The plaintiff Sicher was therein recited as conveying to Joseph Emanuel "two-thirds of a foot off of the west side of lot number 29, . . . and on which Joseph Emanuel's wall stands;" and as having conveyed to Jacob Emanuel "two-thirds of a foot of the east side of lot number 29." Said Jacob Emanuel was by said contract recited as quitclaiming to William Sicher and Joseph Emanuel "an undivided two-thirds of the two and one-half feet of ground off of the east side of lot number 30," and

Joseph Emanuel was recited as quitclaiming unto Jacob
Emanuel and William Sicher "an undivided two-thirds
of said two and one-half feet of ground off of the west
side of lot number 28," all contrary to the true inten-
tion of all said parties, as the same was then and there
conceived and executed by them. That it was the inten-
tion of said parties to place said passageways along the
west side of lot number 30, and the east side of lot num-
ber 28, and same should have been so described in said
writing. That said Joseph Emanuel died testate, de-
vising his property to the plaintiff, Julia Emanuel, his
widow; that plaintiff William Sicher has retained his
ownership in said property ever since the date of said
agreement; that lot number 30, or so much thereof as
is occupied by the building erected pursuant to said
agreement, and subject to the existence of said ease-
ments under the terms of said contract, has, by mesne
conveyances, vested in the defendant Anna Rambousek,
who acquired the same by deed of Lowag dated Decem-
ber 22, 1898, with full notice and acceptance of said
agreements and easements; that plaintiffs have hereto-
fore and until the commision of the wrongs hereinafter
complained of, as have also their agents and tenants,
ever since the execution of said agreement, continually
and fully used and enjoyed the said easement, consist-
ing of two private alleys, and that while the rear por-
tion of the premises occupied by the said three several
owners and their respective tenants, were separated by
fences, yet said rear yards were connected by gates,
permitting free and uninterrupted use and access for
going and coming by and through private alley, from
and into the rear of each of said premises, it having
been intended by said agreement and being necessary
especially for the use of the plaintiff Sicher and his
tenants, to pass through the rear yard of the defendant
by means of the gate between the property of plaintiff
Sicher and defendant, and along said private alley and
passageway. That notwithstanding the existence of

said easements, and in violation of the same, as well as the agreement hereinbefore set out, the defendant, on July 1, 1901, did wrongfully and unlawfully barricade, bolt and obstruct the gate leading from plaintiff Sicher's premises through the rear yard and into said passageway on the west of said seventy-five feet of ground, thereby preventing plaintiffs, their agents, tenants and servants from passing through, or in any way using or enjoying the said easement; that although defendant has been frequently requested to remove said obstruction, and to permit the continued use of said passageway and gate, for the benefit of all said owners, the defendant has hitherto wrongfully refused so to remove the same, but continues to barricade and obstruct said gate and passageway. The prayer was for a reformation of the said writing so as to conform to the true intention of the parties, and an order compelling defendant to remove all obstructions placed by her upon or across said gate or passageway, and forever restraining her, her agents and servants, from erecting or maintaining any obstruction of any kind interfering with the free and unlimited enjoyment of all rights and easements in and by said agreement created, and for general relief.

The answer, after admitting defendant's ownership of lot number 30, and denying generally every other allegation of plaintiffs' petition, set up, that the agreement referred to in the petition was not placed on record until October 27, 1884, and that at said time Jacob Emanuel, one of the parties to said agreement, was dead; that on October 6, 1884, plaintiff Sicher, David Emanuel and Aaron Emanuel, all heirs of Jacob Emanuel, deceased, conveyed by warranty deed title to an undivided three-fifths of said lot 30 to Solomon Emanuel, who was at that time, as an heir of said Jacob Emanuel, the owner of an undivided one-fifth of said lot, and that by another deed of the same date said Solomon Emanuel acquired the remaining undivided one-fifth from his brother, Joseph Emanuel, thus be-

coming the owner of the whole of said lot, all of said deeds being placed on record; that by warranty deed dated September 1, 1888, said Solomon Emanuel conveyed all of said lot 30, free of said agreement referred to in the petition, to Isadore Simon; that at the time of purchasing said lot said Simon had no knowledge of said agreement; that even if said agreement was executed, and it was the real intention of the parties thereto to create for their joint use a passageway at the west side of said lot 30, as alleged in the petition, still the plaintiffs Sicher and Julia Emanuel (wife of Joseph, who inherited an undivided one-fifth of said lot from Jacob Emanuel, deceased), by their deeds divested themselves of all and any right given them by said agreement to the use of any part of defendant's lot number 30 and are therefore not entitled to receive the relief prayed for in the petition. The answer further avers that if said agreement was executed it has long since been abandoned, and never put in force, and that for more than thirty years there has never been any space left on the east side of defendant's lot for a passageway; that it is not true, as alleged in the petition, that the parties to said agreement meant to have and did have a passageway two and one-half feet wide on the west side of lot number 30 for their joint use, instead of on the east side, as erroneously mentioned in said agreement, but that, in truth and in fact, the passageway, left upon on the west side of lot 30, by Jacob Emanuel, at the time of erecting the said houses now standing on said lot, is only twenty inches wide; that even if said agreement was executed, as alleged in the petition, and the passage ways therein sought to be created were by mistake of the scrivener erroneously located, still plaintiffs have for more than eighteen years prior to the commencement of this action, knowingly permitted said agreement to remain of record without warning this defendant or her grantors that it contained an error in relation to the location of said passageways, well

knowing that said lot 30 had been sold and resold and that innocent purchasers were liable to be injured in their title to said lot by plaintiffs' long silence regarding said alleged errors; that at the time defendant purchased said lot 30 she had no knowledge that planitiffs claimed any right under said agreement to use any part of her said lot, nor did she have any knowledge that said agreement contained any error regarding the location of the passageways sought to be created; that plaintiffs, even if they had not divested themselves by deed of all rights in and to the use of the defendant's lot, alleged to have accrued to them under said agreement, have been guilty of such gross laches as would preclude them from the relief prayed in the petition. That defendant and her grantors have, under color of title, for the space of ten whole years and more next before the commencement of this action, been in open and continuous adverse possession towards plaintiffs of all of said lot 30, and that during said ten years plaintiffs have not been permitted by defendant or her grantors to enter upon or use any part of said lot 30, and therefore defendant pleads the Statute of Limitations.

The reply was a general denial of the new matter contained in the answer.

The evidence showed that plaintiff William Sicher, his father-in-law Joseph Emanuel, and brother-in-law Jacob Emanuel, owned the three adjacent lots described in the petition, and, desiring to improve the same, they entered into the agreement referred to and filed with the petition as an exhibit. This agreement is as follows:

"This agreement, made and entered into this eight day of July, A. D. eighteen hundred and sixty-four, between Joseph Emanuel, Jacob Emanuel and William Sicher, witnesseth: that whereas said Joseph Emanuel is the owner of lot number twenty-eight; said William Sicher is the owner of lot number twenty-nine; said Jacob Emanuel is the owner of lot number thirty, all in

block number four of Page's Southern addition to the city of St. Louis, each of said lots fronting twenty-five feet on the north side of Park avenue and running back one hundred and eight feet to an alley, on which said three lots said parties have jointly contracted to and are now building three houses on the center seventy feet of said lots, leaving (a space of two and one-half feet off of the west side of lot twenty-eight and also a like two and one-half feet off the eastside of lot thirty vacant) and making each of said houses standing on twenty-three and one-third feet of ground, and making the east and west houses stand on the lot of said Sicher, number 29, (and said parties hereto have mutually agreed and do hereby mutually agree, one with the other, that the said parcels of two and one-half feet off of the west side of lot number twenty-eight and the east side of lot number thirty shall be used by them, said parties hereto or the owners of said houses and lots as tenants in common), their lots by this arrangement each being twenty-three and one-third feet front instead of twenty-five feet as before, and said parties have also agreed and do hereby agree that the well which is situated on the rear lot number twenty-nine (Sicher's lot) shall be used by the owners of the three houses and their tenants in common, and to more fully effect said arrangement, said William Sicher hereby, in consideration of the sum of five dollars to him in hand paid by Joseph Emanuel and Jacob Emanuel, the receipt of which is hereby acknowledged, does by these presents remise, release and forever quitclaim unto the said Joseph Emanuel two-thirds of a foot off the west side of lot number twenty-nine, hereinbefore more fully described, fronting two-thirds of a foot on the north side of Park avenue by one hundred and eight feet deep to an alley and on which Joseph Emanuel's well stands, and unto the said Jacob Emanuel two-thirds of a foot off of the east side of lot twenty-nine aforesaid, fronting two-thirds of a foot on the north side of Park

avenue by one hundred and eight feet deep to an alley and on which the west wall of the house of said Jacob Emanuel now stands. And said Jacob Emanuel does hereby, in consideration of the sum of five dollars to him in hand paid by William Sicher and Joseph Emanuel, the receipt of which is hereby acknowledged, by these presents remise, release and forever quitclaim unto the said Sicher and Emanuel the undivided two-thirds of the two and one-half feet of ground off of the east of lot number thirty, hereinbefore described, running south the same width one hundred and eight feet to an alley. And the said Joseph Emanuel does hereby, in consideration of the sum of five dollars to him in hand paid by Jacob Emanuel and William Sicher, the receipt of which is hereby acknowledged, by these presents remise, release and forever quitclaim unto the said Jacob Emanuel and William Sicher the undivided two-thirds of the said two and one-half feet of ground off of the west side of lot number twenty-eight, hereinbefore described, running south one hundred and eight feet to an alley. To have and to hold the said several parcels to said parties as hereinbefore expressed, and to the heirs and assigns of said respective parties forever. Said alleys (private) and said well to be kept in good order and free from any nuisance or nuisances by such parties using the same. In witness whereof the said parties have set their hands and seals to three parts hereof, the day and date hereinbefore written.

"JOSEPH EMANUEL, (Seal)
"JACOB EMANUEL, (Seal)
"WILLIAM SICHER, (Seal)

"Attest: A. A. Haeussler.

"State of Missouri, county of St. Louis.

"Be it remembered that, on this 18th day of July, A. D. eighteen hundred and sixty-four, before the undersigned, a notary public within and for the county and state aforesaid, came Joseph Emanuel, Jacob

Emanuel, and on the 30th day of July, A. D. 1864, came William Sicher, who are all three personally known to me to be the same persons whose names are subscribed to the foregoing instrument of writing as parties thereto, and they severally acknowledge the same to be their act and deed for the use and purpose therein expressed.

"In testimony whereof, I have hereunto set my hand and affixed my notarial seal the day and year last above written.

"HERMAN A. HAEUSSLER, Notary Public.

St. Louis Co., Mo.

(Copy of seal): "Herman A. Haeussler, Notary Public, St. Louis, Mo.,

"Filed and recorded October 27, 1884, at 9:35 a. m.

"THOS. F. FARRELLY, Recorder."

Jacob Emanuel and Joseph Emanuel both died before the commencement of this suit. Joseph left surviving him his widow, Julia, who is one of the plaintiffs in this case. Jacob died in 1882, leaving the following children: Joseph, Solomon, David, Aaron, and Johanna, the wife of William Sicher. By his will Jacob Emanuel devised all his property, including his lot known as lot 30 and his house thereon, to Joseph, Solomon, David, Lena the wife of his son Aaron, and Johanna his daughter, the wife of William Sicher. On the 6th of October, 1884, Joseph Emanuel conveyed his one-fifth interest in said lot to his brother Solomon, and on the 25th of October, 1884, David and his wife, and Johanna and her husband Sicher, and Lena conveyed by deed their three undivided one-fifths of said lot to Solomon Emanuel. Afterwards on the first day of September, 1888, Solomon and his wife conveyed the whole of said lot by deed to Isadore Simon. On the 21st of November, 1891, Simon conveyed by deed said lot to David Rosentreter. On the 5th day of January, 1892, Rosentreter conveyed by deed to Thresa Lowag, and on the 22nd of December, 1898, Thresa Lowag conveyed by deed the said lot to the defendant, Mrs. Rambousek.

In the deed from Joseph Emanuel and Solomon Emanuel, of October 11, 1884, acknowledged October 24, 1884, and recorded October 25, 1884, the warranty excepts "all claims which said Joseph Emanuel and William Sicher, their heirs and assigns, may have to the right of way through said lot 30, and to the use of the well thereon." The deed from David Emanuel, Johanna Sicher and Lena Emanuel to Solomon Emanuel, acknowledged October 15, 1884, and recorded October 25, 1884, recited that the said grantors acquired their interest in said lot by devise from Jacob Emanuel. Thereafter on the 27th of October, 1884, the agreement reserving the passageway was duly recorded. The deed from David Rosentreter to Thresa Lowag on January 5, 1892, recites that it "is subject to an agreement dated July 18, 1864, and recorded in book 333, page 336," and in the warranty covenant the agreement is again excepted. The deed from Thresa Lowag to defendant, dated December 22, 1898, described the property as being the same acquired by the grantor from David Rosentreter by the deed last mentioned above, giving the book and page of record, and in the warranty clause excepts "existing agreements and easements."

In 1864, the three owners, Sicher and Jacob and Joseph Emanuel, erected on the three lots three dwelling-houses. The houses are united and present a solid front, unbroken save by the front door and windows in each. There is an ell extending from the rear of each and at the end on the west of the most westwardly house, which was owned by Jacob, there was left a strip of Jacob's lot, two feet and ten and one-fourth inches, uncovered by the house, for a passageway, which leads from Park avenue, the street in front of said houses, to the yards in the rear of the houses. There was a like passageway on the east side of lot 30, the most eastwardly of said houses, of over two feet. The yard in the rear of each house was fenced off, and were each twenty-five feet wide, by an equal length, to a public

alley. An examination of the houses with reference to the three lots, discloses that the east and west walls of the main part of Sicher's house were nine-inch walls, and the end of the joists underlying the floors of the two houses to the east and west of his house extended into and are supported by said walls, and it is apparent that the said joists are rested on Sicher's lot. The evidence also tended to show that the passageways on the east and west of the said three buildings had been continuously used in common by the owners of the said three houses from the time the buildings were erected until the defendant, a short time prior to the bringing of this suit, barred the gateway leading from Sicher's yard into hers. There was evidence, also, showing that the defendant was familar with the property before she purchased it, having frequently visited her grantor, Mrs. Lowag, when the latter occupied it. A plat of the property in question was offered by the defendant, which shows that the alleyway on the east is two feet and ten and one-fourth inches in width, and the one on the west, two feet and three-eighth inches, and that the three houses, including the exterior walls, occupy an aggregate frontage of seventy-one feet and three-eighth inches, and that the two outside houses extend over plaintiff's middle lot a few inches.

The cause was tried in the circuit court and the court found the issues for the plaintiffs, and decreed a reformation of the agreement so as to locate the passageways described in the writing on the west side of lot number 30, and on the east side of lot number 28, and directing defendant to remove all obstructions which she had placed across the gate in the fence separating, in the rear, lots 29 and 30, and restraining her from maintaining or erecting any obstruction interfering or tending to interfere with the right of plaintiffs, their heirs or assigns, to use the passageway located on the

west side of lot 30, or from obstructing the gateway connecting the rear yards of lots 29 and 30.

During the trial the plaintiff William Sicher was offered as a witness to testify in his own behalf. The defendant objected on the ground that William Sicher was a party to the original contract, and as Jacob Emanuel, under whom defendant claims, was dead, William Sicher was incompetent to testify.

The foregoing is a sufficient statement of the facts necessary to an understanding of the case.

On this appeal the defendant urges that plaintiffs are estopped from having the agreement reformed and because plaintiffs have been guilty of laches. Error is also assigned in permitting Sicher, the plaintiff, to testify, and in admitting the statement made by defendant's husband in her presence to Sicher.

I.   At the very threshold, however, of an examination of the errors assigned, we are met with the fact that no exception was taken to the overruling of the motion for a new trial, and therefore this court is precluded from examining any exceptions taken by the plaintiff at the trial and which are now urged for grounds for reversal.

It has been firmly established that unless an exception be taken and preserved by bill of exceptions to the action of the circuit court in overruling a motion for a new trial, there is nothing before the Supreme Court for review, save and except the record proper.    [State v. Marshall, 36 Mo. 400; Ross v. Railroad, 141 Mo. l. c. 395, and cases therein cited.] And this rule applies as well in cases in equity as in cases at law. [Madden's Heirs v. Madden's Heirs, 27 Mo. 544; Ryan v. Growney, 125 Mo. 474.] In view of the above rule, it is obvious that the objections now urged to the competency of the evidence of William Sicher and Mrs. Schultz are not before us for review, as they were matters of exceptions arising on the trial.

As to the record proper, it is too clear for discus-

sion that the bill on its face stated a good cause for relief in equity. Courts of equity have from time immemorial exercised power to reform written instruments so as to make them speak the real agreements made between the parties in cases in which by the mistake or misprision of the scrivener the writing fails to do so, and it will exercise this power not only as between the original parties but as to those claiming under them in privity, such as personal representatives, heirs, assigns, grantees, judgment creditors or purchasers from them with notice of the facts. [Sieberling v. Tipton, 113 Mo. 380; Hagman v. Shaffner, 88 Mo. 28; Martin v. Nixon, 92 Mo. 35.]

One who has notice of a fact which ought to have put him on inquiry, and which he might have discovered by using due diligence, cannot claim as a purchaser without notice.

As to the plea of laches upon which defendant relies, it is sufficient to say that mere lapse of time does not act as a bar in cases of purely equitable jurisdiction. [Bollinger v. Chouteau, 20 Mo. 95; Epperson v. Epperson, 161 Mo. 577.]

Upon the case stated in the petition, it was one falling within the jurisdiction of the circuit court as a court of equity, and we discover nothing in the decree in excess of the jurisdiction of the court, and as we are precluded from inquiring into the weight of the evidence, the judgment must be and is affirmed.

*Burgess, P. J.,* and *Fox, J.,* concur.