## T. S. COLLIER et al. v. ASENATH GAULT et al., Appellants.

### Division Two, May 23, 1911.

1. **LIMITATION: Against Co-tenants.** One co-tenant cannot claim adverse possession against her co-tenants unless she shows that she has not only been in the open, notorious possession of the land, but also that her possession was adverse to her co-tenants and under a claim of exclusive ownership. The rule is much more strict in the case of one co-tenant claiming against others who are co-tenants by inheritance from a common ancestor, than it is as to strangers to their title. The co-tenant claiming adversely to other co-tenants must establish exclusive ownership and use.

2. ———: ———: **Graveyard: Reforming Deed.** The owner of land deeded it to his two daughters, reserving therein one acre for a family graveyard, but did not describe the graveyard then existing on the land and inclosed by wall. In the north side of this wall was a gate, and just opposite across a half acre was a gate to the public road, and these gates were the only means of access to the graveyard, and it could be entered from the public highway only by passing over the intervening half acre, on which prior to the conveyance was an orchard. The evidence is clear and conclusive that there was a mistake in the deed, and that it was the intention of the maker not to convey the half acre or the plot inclosed by the wall, in which were about twenty graves. *Held*, first, that the deed should be reformed so as to reserve the half acre; *second*, the defense of limitations as to the half-acre is not available to one of the daughters, who bought from the other, unless she has been in open possession adverse to the other heirs under a claim of exclusive ownership and use; and, *third*, her admission up to a certain time of common ownership, and the use thereafter of the half-acre by the other heirs in going to and from the burial ground, show that her claim of ownership or possession was not exclusive, and the suit is not barred by limitations.

3. **LACHES: Co-tenants.** Mere delay in bringing an action does not constitute laches, where the other party has suffered nothing by the delay. Where the premises remained substantially in the condition they were when defendant took possession, and she has made no expenditures thereon over and above the benefit she received from their use, her co-tenants are not barred by laches in asserting their legal title thereto, or in having the deed so reformed as to reserve the land as a burying ground.

Appeal from Platte Circuit Court.—*Hon. Alonzo D. Burnes,* Judge.

AFFIRMED.

*James W. Boyd* and *James H. Hull* for appellants.

(1) The grantor, in the deed complained of, specified the ground which he was willing to give for a family burying ground, at the time he signed the deed. If the deed does not contain a description of the reservation of the then contemplated burial ground, no power exists in this court, or elsewhere, to compel him to make a new deed, or give something which did not go in the deed. Hamilton v. Armstrong, 120 Mo. 597; Brownlee v. Fenwick, 103 Mo. 428; Anderson v. Scott, 94 Mo. 637; Ford v. Unity Church Society, 120 Mo. 508; Partridge v. Partridge, 220 Mo. 321. (2) There were no grantees as to the reservation of the private family graveyard, which the respondents now contend should be written into the deed in question. No deed of conveyance has ever been, or can ever be, changed, or modified, or reformed by the court, unless at the time it was executed there was a mutual misunderstanding in reference to the land to be conveyed, or reserved, by and between the grantor and grantee. No power exists to compel a man to give. A man may agree to give, think he will give, but unless he makes his gift irrevocable, executes a deed, the contemplated donation is dead. For more than twenty years before this suit was brought, Mrs. Gault was in the open, exclusive, noto-

rious, adverse possession of all parts of said tract of land, except that included within the said stone wall; and her title thereto by adverse. possession has become perfect and complete. Her adverse possession is fully shown by the evidence; is admitted by all the parties; and the circuit court, in its findings of facts, in reference thereto made the following specific find ing: "That at said time, and ever since said time the north part of said acre was lying out in the pasture and orchard, and has been in the open, adverse, notorious and continuous possession of said defendant Gault up to the present time." The alleged cause of action is barred by the Statute of Limitations. R'. S. 1899, sec. 4262; Franklin v. Cunningham, 187 Mo. 196.

*Wilson & Wilson* and *George W. Day* for respondents.

(1) ·The case presented by the plaintiffs justified the decree entered, reforming the deed. Henderson v. Beasley, 137 Mo. 199; Harding v. Wright, 138 Mo. 11; Hunter v. Patterson, 142 Mo. 310; Castleman v. Castleman, 184 Mo. 432; Williamson v. Brown, 195 Mo. 313. (2) The acre intended to be reserved for a graveyard was appropriated to a pious use; hence it was excepted from our Statute of Limitations. R. S. 1899, sec. 4270; 2 Perry on Trusts, sec. 706; 6 Cyc. 918. This burial acre was set apart for the family burial ground of the Collier heirs and their posterity forever. We are not quite willing to concede that this was not an appropriation of the land to a public use, in the sense in which "public" is used in the section of the statute above cited, and that this case does not fall within the authority of Tracy v. Bittle, 213 Mo. 302. But, passing that question, we call attention to the use in that section of the words "public, pious or charitable use." The disjunctive "or" indicates that lands granted, sequestered or appropriated to either of said uses, are beyond the operation of our Statute of Limi-

tations. (3) If the doctrine of pious uses is not applicable to the facts in this case, then the title which Simeon Collier reserved to himself devolved, at his decease, upon his heirs—one of whom is the defendant Gault. Being a cotenant with her brothers and sister, she could not divest them of their title, by anything less than a claim of exclusive ownership, known to them, or so notorious that they must be presumed to have known of it for the statutory period. Hamilton v. Boggess, 63 Mo. 233; Campbell v. Gas Company, 84 Mo. 352; Coberly v. Coberly, 189 Mo. 117; Estes v. Long, 71 Mo. 605; Comstock v. Eastwood, 108 Mo. 41. (4) Defendants never have had possession of the half acre enclosed by the stone wall; therefore, the possession of that part of the acre outside the enclosure, even if adverse for the statutory period, will not prevent reformation of the deed to correspond with the intention of the parties. If this deed is reformed, it must be reformed so as to conform to the intention of the parties at the time it was written. There cannot, we think, be a reformation of it as to the half acre which is inclosed by the stone wall, and no reformation as to the other half acre. (5) Defendants have suffered nothing by the delay in bringing this action, and they are, therefore, not in a position to invoke the aid of the Statute of Limitations, or the doctrine of laches. Epperson v. Epperson, 161 Mo. 577; Sicher v. Rombousek, 193 Mo. 113; Lipscomb v. Adams, 193 Mo. 530.

FERRISS, J.—Simeon Collier, now deceased, on the 17th day of February, 1885, conveyed to his two daughters, Amelia Collier and Asenath Gault, a tract of land in Platte county, Missouri, by the following deed:

"This indenture, made on the seventeenth day of February A. D., one thousand, eight hundred and eighty-five, by and between Simeon Collier, of the county of Platte in the State of Missouri, party of the

first part, and Amelia Collier and Asenath Gault, of the county of Platte in the State of Missouri, parties of the second part.

"Witnesseth, that the said party of the first part, in consideration of the sum of three thousand and two hundred and no hundredths dollars, to him paid by the said parties of the second part, the receipt of which is hereby acknowledged, do by these presents, grant, bargain and sell, convey and confirm unto the said parties of the second part, their heirs and assigns, the following described lots, tracts or parcels of land, lying, being situate in the county of Platte and State of Missouri, to-wit:

"All of the northeast quarter of section number seven in township number fifty-four, and range number thirty-five, containing 160 acres.

"Conditional, however, that the family burying ground is excepted, which said burying ground is designated as follows, to-wit: Commencing at a corner on the west line of said quarter section, and about one hundred and fifty yards, more or less, from the northwest corner of said quarter section, thence running south 140 yards to a corner, thence running east 35 yards to a corner, thence running north 140 yards to a corner, thence west 35 yards to place of beginning, containing one acre, which is reserved and set apart for the family burying ground of Collier heirs and their posterity forever.

"To have and to hold the premises aforesaid, with all and singular the rights, privileges, appurtenances and immunities thereto belonging or in any wise appertaining, unto the said parties of the second part, and unto their heirs and assigns, forever; the said Simeon Collier hereby covenanting that he is lawfully seized of an indefeasible estate in fee in the premises herein conveyed; that he has good right to convey the same; that the said premises are free and clear of any incumbrances done or suffered by him or those

under whom he claims, and that he will warrant and defend the title to the said premises unto the said parties of the second part, and unto their heirs and assigns forever, against the lawful claims and demands of all persons whomsoever.''

When this deed was executed and delivered there was located on the property, on the west line thereof, a family graveyard containing about twenty graves. This graveyard is not included in the acre described in the deed and reserved for a family burial ground. Plaintiffs state in their petition, and contend, that it was the intention of Simeon Collier, and so understood by the grantees at the time, to reserve an acre of the same dimensions and for the same purpose designated in the deed, said acre to be carved out of the northwest corner of the quarter section, so as to include the graveyard as then existing. The burial ground proper was inclosed within a wall some time after the death of Collier, and continued to be used as a family burial ground, some five or six graves having been added after his death. The wall inclosing this lot of graves has an opening or gate to the north. At the northwest corner of the quarter section is a gate opening on a public road which runs east and west. The only access to the burial ground is through this gate, so that a person desiring to enter the burial ground from the road must pass through said gate and proceed south through a half acre of ground lying between the road and the burial ground inclosed by the stone wall, in which there was an opening to the north. Collier, the grantor in the deed, lived at the time in a house located to the east of the burial lot, and used the above-mentioned entrance from the road as a means of access to his premises, thus necessarily traversing the land lying immediately between the burial lot and the road.

It will be perceived that the deed describes an acre commencing at a point on the west line of said quarter

section, about 150 yards, more or less, south of the
northwest corner; thence proceeding south, etc. The
point mentioned in the deed is 150 yards south of the
road mentioned, and is south of the burial lot proper.
Consequently, the acre described does not include said
burial lot inclosed by the stone wall. It was the inten-
tion of Simeon Collier, as appears from the testimony,
without dispute, to reserve the burial ground already
in use, together with the land lying between it and the
road on the north, as a family burial ground. By mis-
take of the scrivener this acre, in the shape of a paral-
lelogram, lying in the northwest corner of the section
and along the west line thereof, was not described,
but an acre lying south of it was described in the deed.
The property described in the deed was owned by
Asenath Gault at the time this suit was brought, she
having acquired the interest of her sister, Amelia Col-
lier. All of the heirs of Simeon Collier, excepting Mrs.
Gault and a grandson, Eugene Downing, defendants
herein, joined in the petition filed in the Platte Circuit
Court, at the August term, 1906, asking to have the
deed reformed so as to comply with the intention of
the parties, and reserve in lieu of the acre described
in the deed the acre in the northwest corner. The de-
fense was a general denial and plea of the Statute of
Limitations.

It appeared in evidence that the defendant Ase-
nath Gault took possession of the premises under the
deed, and for some time after her father's death lived
in the house located on the quarter section. She and
her son-in-law, her tenant, occupied the acre described
in the deed for agricultural purposes, and also the half
acre north of the burial lot, on which was planted an
orchard at the time of the grantor's death and which
continued in use as an orchard by the defendant. In
1894 it was agreed between the Collier heirs, including
the defendant Mrs. Gault, that there had been a mis-
take in the deed and that the same should be cor-

rected. Two quitclaim deeds were prepared by an attorney, one from the Collier heirs to Mrs. Gault, conveying the acre described in the deed, and one from Mrs. Gault to the heirs, conveying the acre in the northwest corner, and which it was agreed was intended to be reserved in the original deed. The quitclaim deed from the heirs to Mrs. Gault was signed by all of the heirs, including Mrs. Gault. When it came to an exchange of the deeds, Mrs. Gault refused to deliver the deed from herself to the other heirs, giving as her reason that such deed would cut off her way to the road. The court below entered a decree reforming the deed as prayed.

The evidence is clear and conclusive that a mistake was made in the deed. The defendants relied chiefly on the defense of adverse possession. It seems that the defendant, Mrs. Gault, had been in possession of all the premises excepting the burial lot which was inclosed by a wall, and to which she made no claim. It is contended by the plaintiffs that this acre of ground is dedicated to a pious use, and that therefore the Statute of Limitations could not run against it. The defendants also claim that the plaintiffs have been guilty of laches. As to these various propositions, we hold that the evidence establishes mistake. The defense of the Statute of Limitations could be invoked only on the theory that the deed is reformed. If the deed is not reformed, of course the defendant's ownership and possession of the half acre in the northwest corner cannot be disturbed. She says in effect, however, "If the deed is reformed, then I hold that northwest-corner half acre by adverse possession." So we must discuss the question of adverse possession as if the deed described the acre in the northwest corner.

Assuming, now, that the reservation in the original deed applied to the acre in the northwest corner, the title to that acre, reserved from the operation of the deed, remained in Simeon Collier, and, upon his

death, went to his heirs as tenants in common. Mrs. Gault cannot claim by adverse possession against her co-tenants, unless she shows that she not only has been in the open, notorious possession of said acre, but also that such possession was adverse to her co-tenants and under a claim of exclusive ownership. On this point the evidence fails to sustain the defendants' contention. While it is true that Mrs. Gault had the possession and use of the land in controversy, it does not appear that her possession was exclusive as against the other heirs, or that she claimed to own it. On the contrary, up to 1894 she admitted the common ownership, and went so far as to sign a deed conveying the acre in controversy to the heirs, and during all the time, both before and subsequent to 1894, it is evident that the half acre in the northwest corner was used by all of the heirs in going to and from the burial ground. New graves, presumably of deceased relatives, were added. The opening in the north wall of the burial lot was substantially opposite the gate into the public road, and it is fair to conclude that the entire family used the half acre between the inclosed burial ground and the public road for purposes of access to the burial ground, and this without objection on the part of the defendants.

One co-tenant cannot gain title by adverse possession against the others by anything less than a claim of exclusive ownership and use. The rule is far more strict in such cases than in an ordinary case of adverse possession against the world at large. [Golden v. Tyer, 180 Mo. 196; Comstock v. Eastwood, 108 Mo. 41.] So we must hold, without regard to the character of the use impressed upon this acre reserved from the operation of the deed, that there has been no adverse possession as against the heirs.

Upon the question of laches, the law is equally plain that mere delay in bringing an action does not

constitute laches, where the other party has suffered nothing by the delay. [Sicher v. Rambousek, 193 Mo. 113; Lipscomb v. Adams, 193 Mo. 530.]    The premises remained substantially in the original condition. There has been no expenditure made by the defendant, Mrs. Gault, upon the premises over and above the benefit which she has received from their use.    She has taken possession of and used the acre described in the deed, and has thus received the full amount of the property which the deed from her father calls for.    The record shows no claim on her part of exclusive ownership of the acre in dispute, and fails to show any reason for her seeking to defeat this claim of the heirs other than a desire to secure the use of a way across the property in controversy.

The judgment is for the right party, and is affirmed.

*Kennish, P. J.,* and *Brown, J.,* concur.